**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 4:23CR00470 MTS |
| JIACHENG CHEN, KAIYU WEN, and LIANG JIN, | |
| Defendants. | |

**VERIFIED PETITION OF THIRD-PARTIES GANG LIN AND PEI ZHAO FOR ADJUDICATION OF INTERESTS PURSUANT TO 21 U.S.C. § 853(n)(3)**

Petitioners Gang Lin ("Gavin") and Pei Zhao ("Linda") (collectively referred to as "Petitioners"), by and through their counsel Alston & Bird LLP, hereby submit this verified petition to this Court pursuant to Fed. R. Crim. P. 32.2 and 21 U.S.C. § 853(n) for an ancillary hearing and state as follows:

**PRELIMINARY STATEMENT**

1.    This Petition for an Ancillary Hearing is brought by Petitioners to adjudicate the validity of Petitioners' right, title and interest in the following:

      a.    "Approximately $327,602.30 in funds seized from Bank of America account ending in #8860;"

      b.    "Approximately $2,035,347.61 in funds seized from Bank of America account ending in #7416;"

      c.    "Approximately $177,591.46 in funds seized from Bank of America Private Bank account ending in #1831;" and,

      d.      "Approximately $1,029,032.53 in funds seized from JP Morgan Securities account ending in #1141" (subsections (a)-(d) collectively referred to herein as the "Subject Property").

2.      The Subject Property is described and set forth in the Preliminary Order of Forfeiture, dated May 1, 2025 (the "Forfeiture Order") at Document ("Doc.") No. 281, p. 2 and paragraph 2, subsections (a) through (c), and (e), in the above-referenced criminal action brought by the United States of America (the "Government") against Defendants Kaiyu Wen and others (the "Criminal Defendants"), (the "Criminal Action").

3.      As set forth more fully below, Petitioners have right, title and interest in the Subject Property for a number of separate and independent reasons which will be proven at the ancillary proceeding set by this Court:

      a.      *First*, on information and belief, Petitioners believe the seizure warrant and supporting affidavit seizing the Subject Property lacked probable cause and therefore constituted an illegal seizure. Despite repeated requests, the Government has failed to provide a copy of such warrant and affidavit (or a redacted version of these documents) depriving Petitioners of their basic due process rights.

      b.      *Second*, the Government has not provided any detailed information regarding what and which amount(s) within the Subject Property it contends can be allegedly traced to illegal criminal activity. Instead, the Government seized Petitioners' entire deposit accounts indiscriminately and without regard to the source of the funds that already existed in the accounts. This blanket seizure is unsupported and contrary to law.

      c.      *Third*, Petitioner Gang Lin is a bona fide purchaser of value of those fund(s) the Government contends can be allegedly traced to illegal criminal activity. As

described further below, Petitioner Gang Lin had no knowledge about the criminal activity until the government seized his entire accounts. Petitioner's only connection with this case involved utilizing the services of an informal currency exchange network to trade his RMBs held in China for equivalent amounts of U.S. Dollars in order to continue paying for basic living expenses for him and his family in the United States. Such use of an informal currency exchange network and channels are extremely common amongst the Chinese and the Chinese American community in the U.S. and elsewhere due to the Chinese Government's capital control regimes limiting foreign currency exchanges to $50,000 per year per adult. Participation in or using these informal exchange networks is not a violation of U.S. law.

> d.      *Fourth*, Petitioner Pei Zhao has superior right, title, and interest to the Subject Property, specifically the bank accounts that have been seized, as such right, title, and interest in these accounts vested in Petitioner Pei Zhao under community property interests prior to any interest the Criminal Defendants may have had in the Subject Property.

4.      This Petition is submitted pursuant to 21 U.S.C. § 853(n)(3) and Petitioners affirm, under penalty of perjury, that all statements made herein are true and accurate to the best of their knowledge, except as to those matters stated on information and belief.

## I.
## PETITIONERS ARE ALSO VICTIMS OF THE CRIMINAL SCHEME

5.      Petitioner Linda Zhao is a naturalized United States citizen. Petitioner Gavin Lin is a permanent resident of the United States who is in the process of obtaining his U.S. citizenship. Petitioners immigrated to the United States in 2019 on an EB-5 visa, also known as an Employment-Based Fifth Preference Visa. Petitioners are native Mandarin speakers and have

limited English language skills. They reside in Southern California, where there is a sizable Chinese and Chinese American immigrant community.

6.    While Petitioners lived in China, they invested in real estate and in certain private equity funds.  These investments were made over a decade ago, and have resulted in profitable returns for Petitioners and continue to be a source of income for Petitioners. The vast majority of their wealth is held in Chinese financial institutions and private funds.  Nevertheless, the Petitioners have continuously paid U.S. income tax on the income derived from their assets located in China.

7.    As Petitioners, their young children, and elderly mother resided in the United States, Petitioner Gang Lin needed access to additional funds from his Chinese bank accounts in order to pay for family living expenses.  One such method of obtaining access to funds held in Chinese bank accounts is to informally exchange Chinese RMB for United States Dollars. Informally exchanging currency is extremely common within the Chinese community due to the Chinese Government's capital control regimes restricting the amount an individual can exchange his or her Chinese RMB for foreign currency.

8.    In 2021, Petitioner Gang Lin was introduced to Jianying Lu (also known as "Bill Lu").  In or around 2022, Mr. Bill Lu represented to Petitioner that he could help with exchanging Petitioner's Chinese RMB for United States Dollars, as he has done for others.

    a.    A true and correct copy of Petitioner's instant chat messages through the platform "WeChat" is attached hereto as **Exhibit A**.

    b.    A true and correct copy of Petitioner's instant iMessage chat messages is attached hereto as **Exhibit B**.

9.      Services like the ones offered by Mr. Lu (i.e., informal banking or remittance services) (also commonly referred to as a "piaohao") is extremely common within the Chinese community due to the Chinese Government's restrictive capital control schemes.  The Communist Party of China implemented these capital controls (including limiting currency exchanges to $50,000 per year per adult) as part of its attempt at manipulating its currency and, in turn, its political stability.[1]  Members of the Chinese community partake in these "piaohaos" to avoid the Chinese-imposed caps, reporting requirements aimed to do nothing more than keep tight monitoring on Chinese nationals, and the remittance fees associated with exchanging United States Dollars for Chinese RMBs.

10.     At all relevant times, Petitioner's entire interactions exchanging his Chinese RMB for United States Dollars was exclusively through Mr. Bill Lu.  As is normal in these types of arrangements, Petitioners do not know and have never met any of the counterparties to the transactions.  In particular, Petitioners do not know and have never met any of the defendants in this case.  Conversely, on information and belief, the Criminal Defendants also have no knowledge of who Petitioners are.  Lastly, the Government has no evidence that Petitioners participated in any criminal conduct at issue in the Criminal Action.

11.     Indeed, once Petitioner Gavin Lin discovered that the seizure of the funds was connected with the above-referenced criminal case, he voluntarily reached out to the government and explained the circumstances involving the piaohaos, and his lack of knowledge and involvement with respect to the underlying conduct in the criminal case. Moreover, when

---

[1] The Chinese Government's capital control regimes also has the practical effect of surveilling Chinese nationals that seek to invest in the United States by requiring applicants using formal channels for foreign currency exchange to fill out detailed information regarding how such monies will be used overseas.

Petitioners pointed out that the Government seized accounts and funds that had no relation to any currency exchange transactions, the Government acquiesced and released approximately $2.7 million from account ending in #1831.

## II.
## PROCEDURAL HISTORY

12.    The forfeiture proceedings involving Petitioners' assets began around October of 2023, when Petitioners received an administrative seizure notice from the U.S. Immigration and Customs Enforcement and providing an election whether to proceed administratively or judicially under the Civil Asset Forfeiture Reform Act.  The seizure was a shock to the Petitioners.  They had no idea why their accounts were frozen and their money seized.  They retained counsel and submitted a timely election to proceed judicially.

13.    Without providing any notice to Petitioners, the Government did not proceed as Petitioners elected, but instead, included Petitioner's subject accounts in the forfeiture section of the above-captioned superseding criminal indictment on February 12, 2024.

14.    Petitioners later learned that the bases for the forfeiture were related to a series of criminal complaints filed by the Government against a number of defendants for violations of wire and/or bank fraud, as well as conspiracy to commit same.  The Court issued Preliminary Orders of Forfeiture in connection with various criminal defendants in the Criminal Action on March 13 and April 28, 2025.  Petitioners again did not receive notice of these orders from the Government.

15.    On May 1, 2025, the Court issued the subject Forfeiture Order, which, *inter alia*, permits the Government to hold in its "secure custody and control" (a) "Any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of Conspiracy to

Commit Wire Fraud, Mail Fraud, and Bank Fraud; or the offense of Money Laundering"; and (b) the Subject Property.  (Dkt No. 281, Forfeiture Order, at p. 2.)

16.     The Forfeiture Order further provides that the "United States shall publish notice of [the Forfeiture Order] and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture as set forth in Federal Rule of Criminal Procedure 32.2(b)(6) and Title 21, United States Code, Section 853(n)."  (Dkt. No. 281, Forfeiture Order, at p. 3.)

17.     The Government mail served a copy of the Forfeiture Order and notice of same on May 14, 2025.  The Government's Notice states that pursuant to 21 U.S.C. § 853(n)(2), Petitioners must petition the Court for a hearing to adjudicate the validity of their alleged interest in the Subject Property within 30 days of receipt of the Notice.  A true and correct copy of the Notice received by Petitioner Pei Zhao from the Government is attached hereto as **Exhibit C**.

18.     Thirty (30) days have not yet elapsed from the date of receipt of the Government's Notice, dated May 14, 2025.  Accordingly, this Petition has been timely filed.

**III.**
**PETITIONERS HAVE STANDING TO SEEK AN ORDER FROM THE COURT**
**EXCLUDING THE SUBJECT PROPERTY FROM FORFEITURE**

19.     Petitioners are the owner, named account holder, or authorized trustee of each of the deposit accounts that are part of the Subject Property.  A true and correct copy of exemplar bank statements confirming Petitioners as the owner, account holder, or authorized trustee for Bank of America account ending in #8860, Bank of America account ending in #7416, Bank of America Private Bank account ending in #1831, and JP Morgan Chase account ending in #1141 is attached hereto as **Exhibit D**.

20.    "In a forfeiture case, a claimant's Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy." *United States v. Bearden*, 328 F.3d 1011, 1013 (8th Cir. 2003). Whether a claimant has a valid property interest is determined by the law of the state in which the ownership interest exists. *See, e.g.*, *United States v. $500,000.00 in United States Currency*, 591 F.3d 402, 405 (5th Cir. 2009). In California, where Petitioners at all relevant times have resided, a claimant has a possessory interest if he or she has power or "dominion over the property" in question. *See, e.g.*, *United States v. $223,000.00 in U.S. Currency*, 2023 U.S. Dist. LEXIS 181645, at *10-11 (C.D. Cal. Sepy. 19, 2023). As such, Petitioners have standing to seek an order from the Court excluding the Subject Property from the Forfeiture Order.

21.    Additionally, Petitioner Gang Lin acquired right, title, and interest in each of the specific funds that purportedly were deposited into Petitioner's bank accounts the Government contends can be allegedly traced to illegal criminal activity because he is a bona fide purchaser of value: every deposit he received that can purportedly be traced to any alleged illegal criminal activity was accompanied by a contemporaneous outbound payment in Chinese RMB from his bank accounts in China. At all relevant times, Petitioner Gang Lin believed he was exchanging his Chinese RMB for United States Dollars as part of an informal exchange network common amongst the Chinese community for legitimate use and purposes.

22.    Further, Petitioner Pei Zhao has superior right, title, and interest in the accounts that are part of the Subject Property under community property interests, and such right, title, and interest vested in Petitioner Pei Zhao prior to any interest that the Criminal Defendants may have had in the accounts.

**IV.**
**PETITIONERS ARE ENTITLED TO AN ORDER AMENDING THE FORFEITURE ORDER EXCLUDING PETITIONERS' ASSETS FROM FORFEITURE**

23.     Petitioners are entitled to an order excluding the Subject Property from forfeiture because (i) on information and belief, the Government did not have probable cause to seize the Subject Property; (ii) the Government's seizure of Petitioners' entire deposit accounts without any reasonable effort to discern which specific deposits within the deposit accounts can be tethered to alleged illegal criminal activity is improper; (iii) Petitioner Gang Lin is a bona fide purchaser for value of the Subject Property; (iv) and Petitioner Pei Zhao has superior right, title, and interest in the accounts.

24.     Section 853(n) of Title 21 of the United States Code provides that a third party may seek to amend a preliminary forfeiture order to exclude assets for which the Government seeks forfeiture.  21 U.S.C. § 853(n)(1)-(5).  In order to prevail as a bona fide purchaser of value, a petitioning third party must show, by a preponderance of the evidence, that "petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section. . . ."  21 U.S.C. § 853(n)(6)(B).  Additionally, in order to prevail as a third party holding superior right, title and interest in seized property, "in criminal forfeiture proceedings conducted pursuant to 21 U.S.C. § 853(n), the Government stands in the defendant's shoes, and a petitioner who establishes a legal interest in property superior to the defendant is entitled to recovery of its property."  *United States v. Egan,* 811 F. Supp. 2d 829, 838 (S.D.N.Y. 2011).

**A.      On Information and Belief, The Government Lacked Probable Cause to Seize the Subject Property**

25.      Section 853, Title 21, subsection (f), provides that the "Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant."  21 U.S.C. 853(f).  "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances."  *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016).  "The determination of whether or not probable cause exists to issue a search warrant is to be based upon a common-sense reading of the entire affidavit."  *Id.* (citation omitted).  Petitioners have been deprived of their basic due process rights because they cannot assess the validity of the seizure of the Subject Property.  The Government has not provided a copy of the subject seizure warrant and supporting affidavit(s) to Petitioners.

26.      A probable cause showing requires "(1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime."  *Kaley v. United States*, 134 S. Ct. 1090, 1094 (2014).  Prior to seizing the Subject Property, the Government did not speak with Petitioners or conduct any due diligence to confirm whether the monies within the accounts were from legitimate sources.

27.      On information and belief, the Government did not have probable cause to seize the entirety of the Subject Property and Petitioners reserve all rights to challenge the validity of the seizure warrant.

10

**B.     The Seizure and Forfeiture of the Entire Deposit Accounts of the Subject Property is Improper**

28.     Section 853, Title 21 provides that forfeitures are limited to "tainted property; that is, property following from . . . the crime itself." *Honeycutt v. United States*, 581 U.S. 443, 449 (2017).  As the Supreme Court in *Honeycutt* explained:

> Recall, for example, the college student from the earlier hypothetical.  The $3,600 he received for his part in the marijuana distribution scheme clearly falls within § 853(a)(1): It is property he 'obtained . . . as a result of' the crime.  But if he were held jointly and severally liable for the proceeds of the entire conspiracy, he would owe the Government $3 million.  Of the $3 million, $2,996,400 would have no connection whatsoever to the student's participation in the crime and would have to be paid from the student's untainted assets.  Joint and several liability would thus represent a departure from § 853(a)'s restriction of forfeiture to tainted property.

29.     The Government seized the entirety of Petitioners' deposit accounts that are part of the Subject Property, indiscriminately, and without identifying which specific fund(s) within the deposit accounts can be traced to allegedly to illegal criminal activity and otherwise "tainted."  *See, e.g.*, *United States v. Seher*, 562 F.3d 1344, 1368 (11th Cir. 2009) ("pooling or commingling of tainted and untainted funds [does] not by itself render the entirety of an account subject to forfeiture" unless it was done to "facilitate or disguise [an] illegal scheme.").

30.     The Government's approach has been inconsistent.  On January 8, 2025, the Government agreed after nearly half a year of meet and confer to immediately release and return approximately $2.7 million to Petitioner Gang Lin from the funds seized in account number ending in #1831, as "[a]fter further investigation, including review of materials provided by [Petitioner Gang Lin], we are not able to confirm that the remainder of the funds seized from the BOA #1831 Account constitute criminal proceeds."  A true and correct copy of the Government's January 8, 2025, letter is attached hereto as **<u>Exhibit E</u>**.

31.     The Court should amend the Forfeiture Order to exclude all fund(s) from the deposit accounts that the Government cannot trace to alleged illegal criminal activity.

**C.     Petitioner Gang Lin Is a Bona Fide Purchaser for Value Pursuant to Section 853(n)(6)(B)**

32.     To establish status as a bona fide purchaser under Section 853(n)(6)(B), a claimant must show "(1) the claimant has a legal interest in the forfeited property; (2) the interest was acquired as a bona fide purchaser for value; and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture." *United States v. Timely*, 507 F.3d 1125, 1130-31 (8th Cir. 2007); *see also* 21 U.S.C. § 853(n)(6)(B).  Petitioner Gang Lin establishes each of these elements.

**i.     Petitioner Gang Lin Has a Legal Interest in the Forfeited Property**

33.     As set forth in Section III herein, Petitioner Gang Lin is the owner, account holder, or authorized trustee for each of the bank accounts that are subject of the Subject Property.  Accordingly, Petitioner Gang Lin has a legal interest in the bank accounts and the funds therein.

**ii.     Petitioner Gang Lin Exchanged Equivalent Values of Chinese RMB**

34.     Every deposit in the deposit accounts that are part of the Subject Property the Government contends or may contend at the ancillary proceeding can be purportedly traced to alleged illegal criminal activity is tied to an equivalent outbound payment in Chinese RMB from bank accounts in China.  The term "bona fide purchaser for value" "must be construed liberally to include all persons who give value to the defendant in an arms'-length transaction with the expectation that they would receive equivalent value in return."  *United States v. Reckmeyer*, 836 F.2d 200, 208 (4th Cir. 1987).  Petitioner Gang Lin is a bona fide purchaser for value irrespective

of whether he is viewed as a "seller" of his Chinese RMB or a "purchaser" of United States Dollars.  *See id.* (noting also that Section 853(n)(6)(B) makes no distinction between one who "sells" to or "purchases" from a defendant as "both engaged in arms'-length transactions with the defendant, they both gave value to the defendant, and they both received only fair exchange for what they gave.").

35.    Petitioner Gang Lin sent equivalent outbound payments in Chinese RMB from bank accounts in China when he received equivalent value in United States Dollars.

a.    A true and correct copy of Petitioner's bank account statements for Account #8860 reflecting inbound payments in United States Dollars is attached hereto as **Exhibit F**.

b.    A true and correct copy of bank account statements for bank accounts in China reflecting outbound payments in Chinese RMB is attached hereto as **Exhibit G**.

36.    The funds held by Petitioner Gang Lin are entirely derived from lawful income. Petitioner has duly reported and paid U.S. taxes on his income earned in China.  Without access to foreign access channels such as the informal currency exchanges described herein, Petitioner would have no means of converting his Chinese RMB to United States Dollars to meet basic living expenses and fulfill his tax obligations in the United States.  It is self-evident that one cannot pay U.S. taxes in Chinese RMB.

**iii.    Petitioner Gang Lin was Reasonably Without Cause to Believe the Property was Subject to Forfeiture**

37.    The term "reasonably" in Section 853(n)(6)(B) is analyzed using an objective standard.  *See, e.g.*, *United States v. Petters*, 2013 U.S. Dist. LEXIS 10396, at *12 (D. Minn. Jan. 24, 2013).  This means "the petitioner must have an objectively reasonable belief that the

property was not subject to forfeiture." *United States v. Brown*, 509 F. Sup. 1239, 1246 (S.D. Fla. Sept. 10, 2007); *see also United States v. Cuartes*, 155 F. Supp. 2d 1338, 1343 (S.D. Fla. 2001) ("Actual lack of knowledge of forfeitability is not enough. The proper test to be applied under the statute is not merely whether the petitioner had knowledge of forfeitability of the asset but whether the petitioner reasonably held the belief that the property was not subject to forfeiture."). On information and belief, the Government does not dispute Petitioner lacked actual knowledge that certain funds deposited into his bank accounts are allegedly tied to illegal criminal activity or that he or Petitioner Pei Zhao have or had any guilty knowledge regarding the criminal conduct at issue in the Criminal Action.

38. Petitioner Gang Lin reasonably held the belief that the United States Dollars he received in exchange for equivalent values of his Chinese RMB was not subject to forfeiture for a number of reasons, including that informal exchange of foreign currency is extremely common within the Chinese community. *See, e.g.*, *United States v. Bond*, 2015 U.S. Dist. LEXIS 9600, at *23 (W.D. Mo. Jan. 28, 2015) (holding that petitioner was "reasonably without cause to believe" the car he purchased was subject to forfeiture as petitioner "did not know Defendant sold drugs, nor was he aware of any criminal proceedings at the time he entered into the customer agreement with Defendant.").

**D.  Petitioner Pei Zhao has Superior Right, Title, and Interest in the Accounts**

39. Petitioner Pei Zhao and her husband, Petitioner Gang Lin, are permanent residents of the United States of America and in the State of California. Under California law, Petitioner Pei Zhao has an undivided one-half interest in community property. *See, e.g.*, *United States v. Lester*, 85 F.3d 1409, 1413 (9th Cir. 1996). Additionally, Petitioner Pei Zhao was not involved in the informal currency exchange the Government contends serves as the basis for the seizure

14

of the Subject Property. As such, Petitioner Pei Zhao has an undivided one-half interest in the accounts that were seized prior to any right, interest, or title that any of the Criminal Defendants may have had in the accounts.

40.    The Government's approach in seizing the Subject Property, which is now part of the Forfeiture Order, only replaces one set of alleged victims of the Criminal Defendants and replaces them with another (Petitioners). Petitioner Gang Lin lacked actual knowledge of any of the deposits in his bank account as being in any way tied to alleged illegal criminal activity, and he reasonably held a belief that exchanging his Chinese RMB for United States Dollars was not subject to forfeiture. Further, Petitioner Pei Zhao is even further removed as she was not involved in the informal currency exchange.

WHEREFORE, for the reasons stated herein, Petitioners respectfully request entry of an Order:

(a)    Adjudicating whether the seizure warrant and supporting affidavit(s) appropriately set forth probable cause to seize the Subject Property;

(b)    Pursuant to 21 U.S.C. § 853(n)(6)(B), amending the Forfeiture Order to exclude from the Subject Property from forfeiture any and all amounts within the bank accounts the Government cannot tie any deposit to purported illegal criminal activity and declaring that the seizure of Petitioners' entire bank accounts was and is improper;

(c)    Adjudicating that Petitioner Gang Lin is a bona fide purchaser for value of the right, title, or interest in any and all amounts within the bank accounts of the Subject Property the Government contends can be tied to any purported illegal criminal activity and excluding such amounts from the Subject Property from forfeiture pursuant to 21 U.S.C. § 853(n)(6)(B);

15

(d)    Adjudicating that Petitioner Pei Zhao has superior right, title, and interest in the

Subject Property;

(e)    Granting Petitioner's attorneys' fees and costs to the extent applicable and

appropriate under the law; and,

(f)    Granting any and all such relief as this Court deems just and proper.


Dated:        June 13, 2025            */s/    Byung J. "BJay" Pak*
                                       Byung J. "BJay" Pak, *pro hac vice*
                                       **ALSTON & BIRD LLP**
                                       Tel: (404) 881-7000
                                       Fax: (404) 858-8050
                                       1200 Peachtree Street, N.E.
                                       Atlanta, GA 30309
                                       BJay.pak@alston.com

                                       Jonathan J. Kim, *pro hac vice*
                                       **ALSTON & BIRD LLP**
                                       Tel: 213-576-1000
                                       Fax: 213-576-1100
                                       350 South Grand Avenue, 51st Floor
                                       Los Angeles, CA 90071
                                       Jonathan.Kim@alston.com

                                       Jeff Jensen
                                       **TORRIDON LAW PLLC**
                                       13354 Manchester Road, Suite 210
                                       Tel: (314) 920-0138
                                       St. Louis, Missouri 63131
                                       jjensen@torridonlaw.com

                                       Attorneys for Petitioner Gang Lin

## **VERIFICATION**

I, Gang Lin, state that I am the Petitioner identified in this Petition.  I affirm, declare, and verify under penalties of perjury, and pursuant to 21 U.S.C. § 853(n)(3), that I have read the foregoing Verified Petition and know the contents thereof and that the same is true to my own knowledge except as to those matters alleged upon information and belief and as to those matters I believe them to be true.  I have in my possession various documents and correspondence, which are the sources of my information and the grounds for my belief as to the matters set forth in the Verified Petition.

Executed on  06/04/2025         .         _____

                                                                                Gang Lin

14

## **VERIFICATION**

I, Pei Zhao, state that I am the Petitioner identified in this Petition.  I affirm, declare, and verify under penalties of perjury, and pursuant to 21 U.S.C. § 853(n)(3), that I have read the foregoing Verified Petition and know the contents thereof and that the same is true to my own knowledge except as to those matters alleged upon information and belief and as to those matters I believe them to be true.  I have in my possession various documents and correspondence, which are the sources of my information and the grounds for my belief as to the matters set forth in the Verified Petition.

Executed on _06/09/2025_.                _____

                                        Pei Zhao

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 13, 2025, I transmitted via electronic mail a copy of the

foregoing to all parties and counsel of record in this action through the Court's ECF system.

Dated:     June 13, 2025          ***/s/    Byung J. "BJay" Pak***

                                    Byung J. "BJay" Pak, *pro hac vice*
                                      **ALSTON & BIRD LLP**
                                      Tel: (404) 881-7000
                                        Fax: (404) 858-8050
                                        1200 Peachtree Street, N.E.
                                        Atlanta, GA 30309
                                        BJay.pak@alston.com